OXMANS' ERWIN MEAT COMPANY, f/k/a Erwin Meat Company, Respondent, v. BLACKETER, and others, Appellants.

Supreme Court

*No. 76–140. Argued October 4, 1978.—Decided January 9, 1979.*
(Also reported in 273 N.W.2d 285.)

684

For the appellant there were briefs by *Ross R. Kinney, Thomas O. Armstrong* and *Quarles & Brady* of Milwaukee, and oral argument by *Mr. Kinney*.

For the respondent there was a brief by *Terry D. Teper, Joseph F. Wreschnig* and *Teper, Fiorenza, Weiss & Teper, S.C.*, of Milwaukee, and oral argument by *Terry D. Teper*.

SHIRLEY S. ABRAHAMSON, J. Oxmans' Erwin Meat Company, a Wisconsin corporation, filed suit seeking to recover more than $50,000 allegedly due for meat delivered on credit to two Illinois restaurants. The corporate defendant, Blacketer Restaurant Associates, Inc., is an Oklahoma corporation licensed to do business in Wisconsin; it is insolvent and did not answer the complaint. The individual defendant, James E. Blacketer, an officer of the corporation, was personally served while he was physically present in Wisconsin. Blacketer filed an answer and objected to the jurisdiction of the Wisconsin court. Following a jurisdictional evidentiary hearing,[1] the trial court entered an order denying Blacketer's motion to dismiss the action against him. We affirm the trial court's order.

[1] Sec. 801.08, Stats., provides in pertinent part:

"801.08 **Objection to personal jurisdiction.** (1) All issues of fact and law raised by an objection to the court's jurisdiction over the person or res as provided by s. 802.06(2) shall be heard by the court without a jury in advance of any issue going to the merits of the case. If, after such a hearing on the objection, the court decides that it has jurisdiction, the case may proceed on the merits; if the court decides that it lacks jurisdiction, the defendant shall be given the relief required by such decision. Such decision upon a question of jurisdiction shall be by order which is appealable.

"(2) Factual determinations made by the court in determining the question of personal jurisdiction over the defendant shall not be binding on the parties in the trial of the action on the merits."

■

Sec. 801.05(1)(a), Stats., provides that a court has jurisdiction over a "defendant who when the action is commenced is a natural person present within this state when served." Physical presence is the traditional basis of judicial jurisdiction. Restatement (Second) of Conflict of Laws, secs. 27, 28 and Comments. Professor Foster of the University of Wisconsin Law School characterized this basis of jurisdiction as "solidly established." Foster, *Expanding Jurisdiction over Nonresidents,* Wis. Bar Bull. Oct. 1959 Supp., p. 11; Revision Notes—1959, sec. 801.05, West's Wis. Stats. Annot., p. 55.[2]

Blacketer argues however that the word "present" means more than physical presence in the forum at the time of service. Blacketer asserts that sec. 801.05, Stats., in order to be constitutionally valid, must be read to require not only that the individual be physicially present within the state when served but also that the individual have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of 'fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).[3]

■

In our view the United States Supreme Court has not imposed a "minimum contacts" requirement on a state's

[2] As Professor Foster recognized, many writers have expressed dissatisfaction with the "transient" rule. *See,* Ehrenzweig, *The Transient Rule of Personal Jurisdiction: the "Power" Myth and the Forum Conveniens,* 65 Yale L.J. 289 (1965); Von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harvard L.R. 1121, 1178–1179 (1966); Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,* 1963 U. of Ill. L. Forum 533, 583–584 (1963).

[3] We have found only two cases in which this issue is directly addressed. In both the validity of "transient" jurisdiction was upheld. *See Nielsen v. Braland,* 264 Minn. 481, 119 N.W.2d 737 (1963) and *Donald Manter Co. Inc. v. Davis,* 543 F.2d 419 (1st Cir. 1976).

assertion of jurisdiction over a natural person upon whom personal service within the state has been achieved. Neither *International Shoe* nor its progeny, including the recent case of *Shaffer v. Heitner*, 433 U.S. 186 (1977), addresses the issue of the constitutionality of the state's exercising jurisdiction based solely on the service of process upon an individual physically present within state borders.[4] We do not ourselves address that issue because the facts of this case do not require it.

Although we do not today hold the "minimum contacts" rule of *International Shoe* to be applicable where the jurisdictional basis is physical presence of a natural person, we conclude that Blacketer's activities within Wisconsin fulfilled the "minimum contacts" requirement. Blacketer had significant contacts with the State of Wisconsin. He was not a "transient" who was momentarily within the state.

---

[4] *But see* tentative Draft No. 5 of the Restatement (Second) of Judgments, comments on *Shaffer*:

". . . The most significant recent development is the decision in *Shaffer v. Heitner*, 97 S. Ct. 2569 (1977). That decision, though concerned with the exercise of attachment jurisdiction, gives additional emphasis to the significance of minimum contacts in all aspects of territorial jurisdiction. In light of that decision, it may well be doubted whether, as stated in Restatement Second of Conflict of Laws sec. 28, Comment *a*, defendant's 'presence in the state, even for an instant, gives the state judicial jurisdiction over him,' in the absence of some connection between the state and the transaction or the parties involved in the litigation. *Shaffer v. Heitner* seems to undercut that proposition, but the effect on territorial jurisdiction is modest. Given the doctrine of forum non conveniens, few if any states would exercise jurisdiction in such circumstances. See Restatement Second of Conflict of Laws sec. 28, Comment *d*. As a theoretical matter, however, the effect of *Shaffer v. Heitner* is considerable. It would establish 'minimum contacts' in place of presence as the principal basis for territorial jurisdiction."

In holding that it had jurisdiction over Blacketer, the trial court expressly considered the five factors which this court views as important in evaluating whether the requirements of due process have been met under the minimum contacts rule: (1) the quantity of contacts, (2) the nature and quality of the contacts, (3) the source and connection of the action with the contacts, (4) a showing of interest by the State of Wisconsin to the action, and (5) convenience to the defendant of the forum. *Zerbel v. H. L. Federman & Co.*, 48 Wis.2d 54, 64, 179 N.W.2d 872 (1970) : *State v. Advance Marketing Consultants, Inc.*, 66 Wis.2d 706, 718, 225 N.W.2d 887 (1975).

The transcript of testimony at the jurisdictional hearing is not part of the record on appeal, and the trial court did not make formal findings of fact and conclusions of law. Thus the only facts before us are those stated by the trial court in its opinion and those few allegations of the complaint which, not having been denied in the answer, are deemed admitted. Sec. 802.02(4), Stats. This court accords statements of fact in the opinion the status of "findings of fact." *Stevens v. White Motor Corp.*, 77 Wis.2d 64, 71 n. 3, 252 N.W.2d 88 (1977).

The trial court's opinion sets forth the following pertinent facts: The relationship between Oxmans' and Blacketer began in the summer of 1971 when Oxmans' solicited the business of supplying meat for a new restaurant in Milwaukee County. Blacketer told Oxmans' he owned more than 50 percent of the restaurant. Blacketer operated two restaurants in Wisconsin (as well as four in the Chicago area) and had offices in Milwaukee. Forty-four of a total of 50 business meetings between the parties were at Blacketer's office in Milwaukee; the

subject discussed at the meetings was first the supplying of meat for all six of Blacketer's restaurants and later the "recurring problem" of Oxmans' bills. The cause of action in the case at bar arises out of a meeting held in Milwaukee. In the summer of 1974, in connection with a proposed schedule of debt payment, Oxmans' examined Blacketer's personal financial statement which showed Blacketer as having a net worth of over $3 million. At a meeting in October, 1974, Oxmans' presented Blacketer with a document by which Blacketer would personally guarantee the outstanding account. Blacketer told Oxmans' that, while he was willing to sign such a guarantee, his signature was unnecessary because he personally, not the corporation, was a general partner and he, Blacketer, was personally liable for the debts to Oxmans'. A corporate agent had also represented that Blacketer was a general partner in the restaurant enterprises. Oxmans' continued to serve the two restaurants until December, 1974, when both terminated operations. The complaint alleged (and there was no denial) that the insolvent corporate defendant, not Blacketer individually, was in fact the general partner in the restaurants.

The trial court concluded that Blacketer had sufficient contacts with Wisconsin to permit this state to exercise personal jurisdiction over him.

Blacketer argues, however, that all of the contacts in Wisconsin described by the trial court were in his capacity as a corporate agent. He cites numerous cases in support of the propositions (1) that personal jurisdiction over an individual officer or agent of a corporation may not be asserted solely on the basis of jurisdiction over the corporation itself and (2) that the acts of a natural person in the capacity of corporate agent may not be attributed to him personally so as to establish jurisdiction over him also unless the court is able to

find that the corporation has no real independent existence but is merely the *alter ego* of the purported "agent."[5]

The cases cited by Blacketer are not applicable to the circumstances obtaining here. They involve the issue of whether jurisdiction may be asserted under a state statute allowing out-of-state service of process on foreign corporations or individuals who are "doing business" within the forum state. *See e.g. Willner v. Thompson,* 285 F. Supp. 394 (E.D.N.Y. 1971). In these cases the courts held that an individual's activities within the state as corporate agent constitute the corporation's "doing business" in the state for jurisdictional purposes but do not constitute the individual's "doing business" for purpose of personal jurisdiction over the individual. Personal jurisdiction over the officer could not be asserted on the basis of jurisdiction over the corporation.

The case at bar differs significantly from those cited by Blacketer. This case does not involve the issue of whether Blacketer was "doing business" in Wisconsin under a statute authorizing personal jurisdiction under such circumstances. *See* sec. 801.05(1)(d), Stats., which authorizes jurisdiction if the defendant is engaged in substantial activities within the state. Doing business is not the only type of contact with the state justifying assertion of jurisdiction. The doing of an act in the state out of which the plaintiff's claim arises is also generally viewed as a substantial contact with the state

---

[5] Blacketer correctly asserts that the trial court in the case at bar did not expressly find that the contacts it relied on were contacts by Blacketer as an individual and not as a corporate agent. Nor did the trial court expressly invoke the doctrine of "piercing the corporate veil" and find that Blacketer and Blacketer Restaurant Associates, Inc., were one and the same. As we explain, however, such findings are not necessary under the circumstances of this case.

upon which jurisdiction may be based. Sec. 801.05 (3), Stats.; Restatement (Second) of Conflict of Laws, secs. 27, 36 (1) (Comment *c*); Foster, Revision Notes—1959, sec. 801.05, West's Wis. Stats. Annot., p. 59; Conway, *Wisconsin and Federal Civil Procedure*, sec. 8.02 (1976).

The trial court found that the cause of action against Blacketer rested on his alleged fraudulent misrepresentation that he was a general partner of the limited partnership which operated the restaurants, *i.e.*, that he was in fact doing business personally in Wisconsin. Blacketer or his agent allegedly made this representation a number of times in Wisconsin, and the cause of action arises directly from Blacketer's contact with Wisconsin. The cause of action is therefore against Blacketer personally for the tort of fraudulent misrepresentation allegedly committed in Wisconsin.

Whether Blacketer made the misrepresentation as a corporate officer is not the significant factor. We do not think it appropriate or required by the constitution that a corporate agent be shielded from personal jurisdiction if he, as agent of the corporation, commits a tortious act in the forum. Blacketer came to Wisconsin a number of times over a substantial time period. The misrepresentation is alleged to have been made by Blacketer while he was physically present in the state. The cause of action arises from this misrepresentation.

An individual is personally responsible for his own tortious conduct. A corporate agent cannot shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility.

3A Fletcher, Cyclopedia Corporations, sec. 1143; Restatement (Second) of Torts, secs. 523, 549.

We believe it reasonable, just and consistent with traditional notions of fair play that Blacketer—whether or not he acted as a corporate officer—be subjected to suit in Wisconsin to enforce personal liability arising from an alleged tortious act he committed while personally present in the state.[6]

If Blacketer drove the corporation's car and had an automobile accident in Wisconsin injuring a Wisconsin citizen, there would be no question that Wisconsin could exercise jurisdiction over him. We see no reason for treating Blacketer differently when the cause of action. in tort is based on an alleged misrepresentation.

In *State v. Advance Marketing Consultants, Inc.*, 66 Wis.2d 706, 225 N.W.2d 887 (1975), we held that it was constitutional for Wisconsin to exercise jurisdiction over an Illinois resident served in Illinois on the complaint that he had engaged in the use of untrue, deceptive, misleading advertisements in Wisconsin. Jurisdiction was asserted under sec. 801.05(3), Stats., which provides that a court has jurisdiction over a person served outside

---

[6] Several courts have recognized that personal jurisdiction over the corporate agent can be obtained in the state in which the agent committed a tortious act. *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 931 (6th Cir. 1974) (no evidence that officer committed tortious act in forum); *Fashion Two Twenty, Inc. v. Steinberg*, 339 F. Supp. 836 (E.D.N.Y. 1971) (acts complained of did not cause injury within the forum as required by long-arm statute); *Idaho Potato Comm'n v. Washington Potato Comm'n*, 410 F. Supp 171 (D.C. Idaho, 1976) (officers not personally present in forum); *Merkel Assoc., Inc. v. Bellofram Corp.*, 437 F. Supp. 612 (1977) (officer's act not included in long-arm statutes).

the state in any action claiming injury "arising out of an act or omission within this state by the defendant." We quoted with approval the following language from *Doug Sanders Golf v. American Manhattan Industries, Inc.*, 359 F. Supp. 918, 921 (D.C. Wis. 1973): "An individual cannot induce a resident of Wisconsin to enter into a contract in Wisconsin which benefits the person making such representations and then claim immunity from suit in Wisconsin because of lack of jurisdiction." The case at bar is substantially similar to *Advance Marketing* except that Blacketer was personally served within the state and the "long arm" statute, sec. 801.05 (3), is not in issue. If Wisconsin might constitutionally have extended jurisdiction over Blacketer by service outside the state (sec. 801.05(3), Stats.) for his act or omission within the state, Wisconsin's exercise of jurisdiction over Blacketer by personal service within the state (sec. 801.05(1)(a), Stats.) cannot be offensive to constitutional principles in this case.

*By the Court.*—Order affirmed.