Jason FERRIS and Tara Ferris,
Plaintiffs-Appellants,

v.

LOCATION 3 CORPORATION, Defendant,

Thomas A. SAUER, James S. Lechner and
Shan Mason, Defendants-Respondents.†

Court of Appeals

*No. 2010AP2203. Submitted on briefs April 26, 2011.*
*—Decided August 10, 2011.*

2011 WI App 134

(Also reported in 804 N.W.2d 822.)

† Petition for Review filed.

155

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Daniel W. Stevens* and *Rudolph J. Kuss* of *Law Office of Daniel W. Stevens* of Brookfield.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Donald J. Murn, Michelle E. Martin,* and *Joshua B. Czuta of Murn & Martin, S.C.* of Waukesha.

Before Brown, C.J., Neubauer, P.J., and Reilly, J.

¶ 1. BROWN, C.J.  Jason and Tara Ferris allege that Thomas Sauer, James Lechner, and Shan Mason conspired to lie on behalf of Location 3 Corporation in a real estate condition report, in violation of WIS. STAT.

§§ 895.446 and 943.20(1)(d) (2009–10).[1] The defendants moved for partial summary judgment, arguing that the claim was barred by the economic loss doctrine and that Sauer, Lechner, and Mason should be dismissed from the lawsuit because there were no facts pled to support piercing the corporate veil. The trial court found that the plaintiffs' claim was not barred by the economic loss doctrine, but granted summary judgment dismissing Sauer, Lechner, and Mason from the case as individuals, stating that there was nothing in the record indicating that they acted outside the scope of their authority as agents of Location 3. We agree with the trial court that the economic loss doctrine does not bar Ferris's[2] §§ 895.446 and 943.20(1)(d) claim. However, we reverse the order dismissing the individuals Sauer, Lechner, and Mason from the case. Wisconsin case law has firmly established that individuals are liable for their own tortious conduct. Thus, the defendants in this case cannot hide behind the corporate veil.

## FACTS

¶ 2.   On October 24, 2006, Ferris purchased real property located at W210 S8349 Fireside Court in Muskego from Location 3 Corporation.[3] Sometime after closing, Ferris discovered that the landfill adjacent to his property was also a Superfund[4] site.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[2] We will refer to Jason and Tara Ferris collectively as "Ferris" throughout this opinion.

[3] Ferris initially offered to purchase a different lot on May 12, 2005. Sometime after closing, Ferris requested to change to the lot that he now owns, and Location 3 granted to transfer for an even exchange on October 24, 2006.

[4] A Superfund site is "a site where toxic wastes have been dumped and the Environmental Protection Agency has desig-

159

¶ 3. On October 20, 2009, Ferris filed a complaint against Location 3, Lechner, Sauer, and Mason, alleging that they knew about the Superfund site but failed to disclose it on the real estate condition report. On the report, "no" was circled next to the question, "[a]re you aware of any other conditions or occurrences which would significantly increase the cost of development or reduce the value of the Property to a reasonable person with knowledge of the nature and scope of the condition or occurrence?" Pertinent to this appeal, Ferris alleged in his complaint that the real estate condition report was signed in violation of WIS. STAT. §§ 895.446 and 943.20(1)(d)[5] because "the sellers made false representations of fact regarding the condition of the subject premises, knowing that said representations were untrue, or recklessly, without caring whether they were true or not."[6] Although the real estate condition report was only signed by Lechner, Ferris alleged in an

nated them to be cleaned up." *See* THE FREE DICTIONARY, http://www.thefreedictionary.com/Superfund+site (last visited July 14, 2011).

[5] WISCONSIN STAT. § 895.446 states that "[a]ny person who suffers damage or loss by reason of intentional conduct . . . that is prohibited under [WIS. STAT. §] 943.20 . . . has a cause of action against the person who caused the damage or loss."

WISCONSIN STAT. § 943.20(1)(d) states that whoever "[o]btains title to property of another person by intentionally deceiving the person with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made" may be penalized.

[6] Ferris also pled a claim for breach of contract and for misrepresentation as a violation of WIS. STAT. § 100.18. The § 100.18 claim was dismissed by stipulation of the parties. The breach of contract claim was not part of the summary judgment decision and is not a subject of this appeal.

amended complaint[7] that Lechner "signed the condition report after consulting and discussing the issues regarding disclosure with Mr. Sauer and Mr. Mason [and] acted in concert with the three of them in signing the condition report."

¶ 4. As we stated at the outset, the defendants filed a motion for partial summary judgment, alleging that the WIS. STAT. §§ 895.446 and 943.20(1)(d) claim was barred by the economic loss doctrine, which precludes parties to a contract from pursuing tort remedies to recover solely economic losses arising out of the performance or nonperformance of the contract. *See Below v. Norton*, 2007 WI App 9, ¶ 15, 297 Wis. 2d 781, 728 N.W.2d 156 (Ct. App. 2006) (*Below I*), *aff'd*, 2008 WI 77, 310 Wis. 2d 713, 751 N.W.2d 351 (*Below II*). They also argued that there was no individual liability for Sauer, Lechner, and Mason because there were no facts to support piercing the corporate veil. After a hearing, the trial court found that the economic loss doctrine did not bar Ferris's §§ 895.446 and 943.20(1)(d) claim, but that the individual defendants should be dismissed from the case because "[t]here's nothing in this record that indicates that they acted outside the scope of their obligations or duties within the—within their corporate responsibilities of the entity known as Location 3 Corporation." Lechner, Sauer, and Mason were subsequently dismissed from the case.

¶ 5. Ferris appeals. He argues, as he did at the trial level, that under *Oxmans' Erwin Meat Co. v. Blacketer*, 86 Wis. 2d 683, 692, 273 N.W.2d 285 (1979), individuals may be held personally liable for misrepre-

---

[7] The amended complaint was filed April 12, 2010, within six months of the filing date of the original complaint. So it became the operative complaint pursuant to WIS. STAT. § 802.09(1).

sentations made as corporate agents. So he essentially argues that he was not required to show that the individuals Sauer, Lechner, or Mason acted outside the scope of their authority as agents of Location 3 Corporation. He further argues that Sauer and Mason are responsible, based on a theory of civil conspiracy, even though they did not sign the real estate condition report. Rather than respond directly to Ferris's individual liability argument, Sauer, Lechner, and Mason contend that Ferris did not plead the elements of his misrepresentation or conspiracy claims with particularity, that there are no facts to support his claims, and that his misrepresentation claim is precluded by the economic loss doctrine.

## DISCUSSION

¶ 6.  The standard of review for summary judgment is well known. Summary judgments are reviewed de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 317, 401 N.W.2d 816 (1987). Our first task is to determine whether plaintiffs have stated a claim for relief. If so, then summary judgment is appropriate in cases where the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 315 (citing Wis. Stat. § 802.08(2)).

*Sufficiency of the Complaint*

¶ 7.  We begin with Ferris's complaint. In testing the sufficiency of a complaint, we take all facts pled by plaintiffs and all inferences which can reasonably be derived from those facts as true. *Green Spring Farms*,

162

136 Wis. 2d at 317. "Pleadings are to be liberally construed, with a view toward substantial justice to the parties." *Id.* (citing Wis. Stat. § 802.02(6)). A complaint should only be dismissed as legally insufficient if it is clear that the plaintiffs cannot recover under any circumstances. *Prah v. Maretti*, 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982).

¶ 8. We agree with the trial court that Ferris's Wis. Stat. §§ 895.446 and 943.20(1)(d) claim was "properly pled." The elements of this claim are: (1) that the defendant made false representations to the plaintiff, (2) that the defendant knew that these representations were false, (3) that the defendant made the representations with the intent to deceive and to defraud the plaintiff, (4) that the plaintiff was deceived by the representations, (5) that the plaintiff was defrauded by the representations, and (6) that the defendant obtained money through the sale of property to the plaintiff. Wis JI—Civil 2419. In his amended complaint, Ferris alleged that Lechner acted "in concert" with Sauer and Mason when signing a real estate condition report falsely stating that he knew of no conditions that would adversely impact the value of the property, even though he, Sauer and Mason knew that the adjacent landfill was a Superfund site. The complaint alleges that the misrepresentations were made with the "intent to deceive and induce the plaintiffs to act on them" and that Ferris believed the defendants' representations and "justifiably relied on them." We see no problem here.

¶ 9. Sauer, Lechner, and Mason contend that Sauer and Mason cannot be held personally liable for their actions because there is "no cause of action alleged for a conspiracy." As Ferris points out, civil conspiracy is

not a separate cause of action, but rather a theory of liability. *See Segall v. Hurwitz*, 114 Wis. 2d 471, 481, 339 N.W.2d 333 (Ct. App. 1983) (citing *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507 (1977)). Therefore, we find it insignificant that no separate cause of action was alleged for conspiracy. Instead, "[t]o state a cause of action for civil conspiracy, the complaint must allege: (1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *City of Milwaukee v. NL Indus., Inc.*, 2005 WI App 7, ¶ 25, 278 Wis. 2d 313, 691 N.W.2d 888 (Ct. App. 2004) (citation omitted). As Ferris points out, he alleged the wrongful acts and the damage by properly pleading the misrepresentation claim. In addition, the formation of the conspiracy is adequately alleged in his statement that Sauer, Lechner, and Mason acted "in concert" to complete the real estate condition report.

■■

¶ 10.  Sauer, Lechner, and Mason also argue that Ferris's amended complaint is inadequate under WIS. STAT. § 802.03(2), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As both parties point out, to plead something with particularity, it is necessary to specify the time, place, and content of an alleged false representation. *Friends of Kenwood v. Green*, 2000 WI App 217, ¶ 14, 239 Wis. 2d 78, 619 N.W.2d 271. Particularity means the "who, what, when, where and how." *Id.* (citation omitted). The particularity requirement affords notice to a defendant for the purposes of a response and is "designed to protect defendants whose reputation could be harmed by lightly made charges of wrongdoing involving moral turpitude, to minimize 'strike suits,' and to discourage

the filing of suits in the hope of turning up relevant information during discovery." *Id.* (citation omitted).

■

¶ 11. Ferris's amended complaint alleges that Lechner signed a real estate condition report "after consulting and discussing the issues regarding disclosure with Mr. Sauer and Mr. Mason." It also alleges that "representations were made in the condition report indicating that Mr. Lechner, Mr. Sauer, and Mr. Mason were unaware of any conditions or occurrences, (defects) which would reduce the value of the property to a reasonable person with knowledge of the nature and scope of the condition or occurrence." So we know what the representation was, who made it, and where, when, and how it was made. The amended complaint satisfies WIS. STAT. § 802.03.[8]

---

[8] Sauer, Lechner, and Mason also argue that there are no facts in the record to support certain elements of Ferris's conspiracy and WIS. STAT. §§ 895.446 and 943.20(1)(d) claims. As to the misrepresentation claim, they complain that the record contains no facts as to the defendants' intent to deceive or the plaintiffs' damages. Regarding the conspiracy, they claim that there is no evidence of unlawful purpose or damages. However, as Ferris point out, the defendants did not make these arguments at the trial level.

Although we may affirm the trial court's decision on grounds not argued to the trial court, *see State v. Holt,* 128 Wis. 2d 110, 125, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds,* we generally will not do so in cases like this where "further fact finding on the underlying question is necessary to a resolution of the issue." *State v. Kiekhefer,* 212 Wis. 2d 460, 475–76, 569 N.W.2d 316 (Ct. App. 1997). And, as we already stated, we are comfortable that Ferris's complaint sufficiently alleged a conspiracy and a WIS. STAT. §§ 895.446 and 943.20(1)(d) claim against Sauer, Lechner, and Mason. We will not discuss this issue further.

¶ 12.    Next, we address whether the economic loss doctrine bars Ferris's claim under WIS. STAT. §§ 895.446 and 943.20(1)(d) as a matter of law. We agree with the trial court that it does not. The economic loss doctrine "is a judicially created doctrine that seeks to preserve the distinction between contract and tort." *Below II*, 310 Wis. 2d 713, ¶ 24, (citation omitted). It provides that a party to a contract may not pursue tort remedies to recover solely economic losses arising out of the performance or nonperformance of the contract. *Below I*, 297 Wis. 2d 781, ¶ 15. Sauer, Lechner, and Mason contend that because Ferris is making a claim for misrepresentation that resulted in purely economic losses, the economic loss doctrine precludes the claim. Ferris responds that his claim is actually one for statutory violation, and case law dictates that the economic loss doctrine does not preclude statutory claims.

¶ 13.    In *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 33, 308 Wis. 2d 103, 746 N.W.2d 762, the supreme court analyzed the economic loss doctrine's application to a different statutory claim. It stated, in pertinent part, that it was "satisfied that the [economic loss doctrine] cannot apply to statutory claims." *Id.* Then, in *Below II*, it declined to address the specific issue of whether the economic loss doctrine was applicable to WIS. STAT. §§ 895.446 and 943.20(1)(d) claims, but pointed the trial court to *Stuart*, stating:

> Upon remand, the circuit court should clearly state that court's holding on that statutory claim. The circuit court should review this court's recent decision in *Stuart*[, 308 Wis. 2d 103, ¶ 33]. That case addressed

the issue of whether the statutory claim involved therein was barred by the [economic loss doctrine]. In that case, we stated, "We are satisfied that the [economic loss doctrine] cannot apply to statutory claims . . . ." *Id.*

*Below II*, 310 Wis. 2d 713, ¶ 7. The language in *Stuart* is clear to us: the economic loss doctrine does not preclude Ferris's §§ 895.446 and 943.20(1)(d) claim.

### Individual Liability

¶ 14.    Finally, we address the basis of the trial court's decision—whether the defendants may be held liable as individuals in addition to Location 3's alleged corporate liability. Ferris contends that they may under *Oxmans'*. He cites to the following passage:

> An individual is personally responsible for his own tortious conduct. A corporate agent cannot shield himself from personal liability for a tort he personally commits or participates in by hiding behind the corporate entity; if he is shown to have been acting for the corporation, the corporation also may be liable, but the individual is not thereby relieved of his own responsibility.

*Oxmans'*, 86 Wis. 2d at 692–93 (citing 3A WILLIAM A. MEADE FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1143) (additional citation omitted). Sauer, Lechner, and Mason did not directly respond to that argument in their appellate brief. In their summary judgment brief, they contended that the *Oxmans'* passage cited by Ferris as authority is dicta, that the issue before the *Oxmans'* court was personal jurisdiction rather than veil piercing, and that Ferris pled no grounds to support piercing the corporate veil. *See Oxmans'*, 86 Wis. 2d at 686–87. This might be a closer question if not for case law since *Oxmans'*.

167

¶ 15. Shortly after *Oxmans'*, the supreme court reiterated the same principle and even extended it to some nontortious conduct by agents:

> The general rule is that the agent, as well as the principal for whom he is acting is responsible for the tortious acts of the agent. In such situations the corporate shield protects only those who would otherwise be vicariously liable, not those whose own conduct is called into question.
>
> In this case it is their own conduct for which appellants are being held responsible, i.e., their decision to terminate the business. While that conduct is by no means tortious, it is conduct which would serve as a basis of recovery against the very party for whom appellants claim to have acted, if we were to accept their contention. Under such circumstances we think it unwise to ignore the fact of who actually acted on behalf of the corporation.

*Hanmer v. DILHR*, 92 Wis. 2d 90, 97–98, 284 N.W.2d 587 (1979) (citations omitted). Then, more recently, in *Stuart*, 308 Wis. 2d 103, ¶¶ 41–42, the supreme court applied the same principle to cases where an individual acting on behalf of a corporation violates the Home Improvement Practices Act. When the supreme court intentionally takes up and announces the law three times, we think it clear that the initial statement was not dicta. But even if we had come to the opposite conclusion, the supreme court has made it clear that we may not dismiss statements from its opinions as dicta. *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶¶ 52–58, 324 Wis. 2d 325, 782 N.W.2d 682.

¶ 16. In this case, the trial court found that because Ferris had not alleged facts that showed the

defendants acted outside the scope of their authority as corporate agents, they could not be held personally liable. However, we are confident that *Oxmans'* and its progeny make that showing unnecessary—Sauer, Lechner, and Mason may be held personally liable if a fact finder finds that they engaged in tortious conduct, regardless of whether they acted on behalf of Location 3 when they did so.

*By the Court.*—Order reversed.